# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>              v.<br><br>1976 TWIN ENGINE PIPER AIRCRAFT (TAIL NO.: N787RW) AND ITS INVENTORY (Log Book, Maintenance Book and Keys),<br><br>    Defendant. | **Civil No. 12-1386 (SEC)** |

## OPINION & ORDER

In this civil forfeiture action *in rem*, Plaintiff United States of America seeks the forfeiture of a 1976 twin-engine Piper aircraft, identified by tail number N787RW, along with its inventory. According to the unsworn declaration filed in support of the forfeiture complaint, the defendant aircraft was allegedly used to transport shipments of cocaine into Puerto Rico. Docket # 2-1.

Two challengers appeared. The first was Sintex Enterprises, Corp., (Sintex) which filed a verified claim stating that it was the true and lawful owner of the defendant aircraft. Claimant Aero Investment Group, Inc., (Aero) filed the second claim. Aero asserts that it performed "the annual inspection, parts installed, and repairs done" on the aircraft, and charged Sintex $34,145.67 for this work. *See* Docket No. 14 at ¶ 2. In order to secure this payment, Aero retained the aircraft's logbook, which is a comprehensive record of the operation and maintenance of the aircraft. However, Aero voluntarily relinquished possession of the aircraft to Sintex.

Now before the Court is the government's motion to strike the claims made by Sintex and Aero. See Docket # 43. Each claimant filed its respective opposition. *See*

Docket ## 46 & 47. Recently though, the government and Sintex settled their differences, rendering this portion of the pending motion to strike moot. Docket # 56. Nonetheless, Aero's claim remains live. For the reasons that follow, the Court **GRANTS** the government's motion to strike.

### Standard of Law

The Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, governs all civil forfeiture proceedings brought on or after August 23, 2000. This legislation increased the government's burden to prove that the defendant property is subject to forfeiture "from mere probable cause (the old standard) to the preponderance of the evidence." U.S. v. 6 Fox Street, 480 F.3d 38, 42 (1st Cir. 2007). Where, as here, "the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." See Title 18 U.S.C. § 983(c)(3); United States v. Funds in Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120.00), 730 F.3d 711, 716 (7th Cir. 2013).[1]

Civil forfeiture actions are directed against a defendant property. Thus, "defenses against the forfeiture can be brought only by third parties, who must intervene." United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003). As a threshold matter, putative intervenors have the burden to demonstrate statutory and constitutional standing. Statutory standing refers to the claimant's ability to show that he or she has complied with the rules governing civil forfeiture proceedings. Constitutional standing refers to the question whether the claimant's purported interest in the property is sufficient, under Article III of the Constitution, to gain access to the courts. To do so, the intervenor must "demonstrate an ownership or possessory interest in the seized property… ." United States v. 116 Emerson St., 942

---

[1] Here, Aero does challenge to the government's allegations regarding the forfeitability of the defendant aircraft.

F.2d 74, 78 (1st Cir. 1991). Courts "generally do not deny standing to a claimant who is either the colorable owner of the res or who has any colorable possessory interest in it." United States v. U.S. Currency, $81,000.00, 189 F.3d 28, 35 (1st Cir. 1999).

**Analysis**

Before beginning, it is worthwhile to iron out some wrinkles in the parties' discussion of the applicable law. In support of its argument, the government points to 18 U.S.C. § 983(d)(6), which states that:

> (6) In this subsection, the term "owner"--
>> (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
>> (B) does not include--
>>> (i) a person with only a general unsecured interest in, or claim against, the property or estate of another[.]

See 18 U.S.C. § 983(d)(6). The parties proceed under the assumption that this text controls whether or not a claimant has Article III standing to challenge a civil forfeiture. Nevertheless, it is critical to note that § 983(d)(6)'s definition of owner is circumscribed to "this subsection" – which refers to the procedure and requirements for a claimant to raise the "Innocent Owner Defense" under § 983(d).[2]

This observation is more than just a matter of semantics. The First Circuit has warned courts not to "conflate the constitutional standing inquiry with the merits determination that comes later." One-Sixth Share, 326 F.3d at 41. At this stage, all that is required is that Aero show a "colorable possessory interest" in the defendant aircraft. United States v. U.S. Currency, $81,000.00, 189 F.3d 28, 35 (1st Cir. 1999). Nevertheless, even under this "very forgiving" standard, One-Sixth Share, 326 F.3d at 41, Aero still falls short of the finish line.

---

[2] CAFRA declares that an "innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). The burden of proof belongs to the claimant who asserts the innocent owner defense. Id.

Aero's claim relies exclusively on Article 1492 of the Puerto Rico Civil Code, which provides that a "person who has executed a work on personal property has the right to retain the same as a pledge until he is paid therefor." P.R. Laws Ann. tit. 31, § 4133. According to Aero, it is "common practice" in the aviation industry for mechanics to retain airplane logbooks as a guarantee of payment because, given that they are a comprehensive record of the aircraft's mechanical and maintenance history, their absence "greatly diminishes the marketability and value of the aircraft." See Docket # 46 at ¶ 16. By retaining the logbook, Aero posits that it perfected a mechanic's lien over the aircraft pursuant to Article 1492. Aero claims that this is sufficient to grant it Article III standing. The government rejects this position, arguing that Aero only has a general unsecured credit against Sintex. United States v. $20,193.39, 16 F.3d 344, 346 (9th Cir. 1994)("[T]he federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.") (collecting cases).

Two main considerations lead the Court to hold that Aero's retention of the logbook is not sufficient to constitute a colorable possessory interest over the defendant aircraft. The first is a textual one: Article 1492 allows a party to retain the very thing on which the work was executed as a pledge in order to secure the payment for that work. In this case, Aero admits that it charged Sintex $34,145.67 "for the annual inspection, parts installed and services provided to the aircraft of reference." See Docket # 14 at ¶ 4 (our emphasis). Aero did not work on the logbook, but rather on the aircraft. Thus, by its very terms, Article 1492 entitled Aero to retain the airplane itself in as a pledge to secure the outstanding amounts from Sintex. However, Aero voluntarily relinquished possession of the airplane, and along with it, any possible security interest under Article 1492.

The second is that, while Aero bears the burden to establish a "colorable" interest in the aircraft, it has failed to provide any authority in support of its position. The Court's own research has failed to uncover any case in which Article 1492 has

been construed to allow the retention of something other than the specific item upon which the work was performed (in this case, part of the aircraft's inventory). Further, Aero has also neglected to provide any backing for its claim that it is common practice in the airline industry to retain logbooks to secure the payment of maintenance bills.[3]

Under these circumstances, the Court finds that Aero has not done enough to show that it has Article III standing to bring its claim to court.

**Conclusion**

For the reasons stated above, government's motion to strike Aero's claim is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September, 2015.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[3] Even if this were the case, the Court's observation concerning the text of Article 1492 would still trump this contention. *Quaere* whether this argument, properly supported, would be enough to establish a "colorable possessory interest" for purposes of Article III under some other provision of law. Since the issue was not briefed, the Court passes no judgment on the matter.